## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

JUDY C. MAGEE,

                              Plaintiff,

           vs.                                    Civil Action No.
                                                  5:05-CV-0413 (FJS/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,[1]

                              Defendant.

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

OLINSKY, SHURTLIFF LAW FIRM           JAYA A. SHURTLIFF, ESQ.
300 S. State St., 5th Floor
Syracuse, NY 13202

FOR DEFENDANT:

HON. GLENN T. SUDDABY                 WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

---

[1]     Plaintiff's complaint, which was filed on March 31, 2005, named Jo Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL          BARBARA L. SPIVAK, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                        ANDREEA LECHLEITNER, ESQ.
                                          Assistant Regional Counsel


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Judy C. McGee, who suffers from various conditions

including chronic neck and back pain, fibromyaligia, irritable bowel

syndrome ("IBS"), and a hiatal hernia, has commenced this proceeding

seeking judicial review of the denial of her application for Supplemental

Security Income ("SSI") benefits under the Social Security Act, based

upon an administrative finding that she was not disabled at the relevant

times.  Plaintiff maintains that in finding no disability, the administrative law

judge ("ALJ") assigned by the agency to hear and decide the matter erred

in a number of ways, including by 1) failing to obtain medical records to fill

critical voids in the evidence before the agency; 2) misinterpreting and/or

improperly discounting opinions of her treating physician; 3) failing, when

determining plaintiff's residual functional capacity ("RFC"), to specify the

frequency of any need for her to alter positions; 4) relying upon the

testimony of a vocational expert, both because it was based upon an

-2-

unsupported hypothetical which did not approximate plaintiff's circumstances, and because his testimony reflected the lack of a sufficient number of jobs in the national and local economies capable of being performed by her to negate a finding of disability; and 5) improperly rejecting, as not fully credible, plaintiff's complaint of disabling pain without proper explanation or support.

Having considered the Commissioner's determination in light of plaintiff's arguments, I find that it resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born on May 27, 1974; at the time of issuance of the ALJ's determination in this matter, she was thirty years old.  Administrative Transcript at 12, 34.[2]  At the relevant times plaintiff lived in Auburn, New York, together with her husband and four children, ranging in age from six to thirteen years old.  AT 34-35, 273.  Plaintiff achieved a general equivalency diploma ("GED"), and additionally has attended some Board of Cooperative Educational Services ("BOCES") training.  AT 51.

---

[2]    Portions of the administrative transcript of evidence and proceedings before the agency, Dkt. No. 6, filed together with the Commissioner's answer, will be cited as "AT __."

Plaintiff has not worked since November 30, 1999.  AT 273-74.

Prior to that date, plaintiff worked as a nurse's assistant in various

settings, including in a nursing home and at a local hospital.  AT 46, 54-

55, 74, 281-82.

In May of 1999, plaintiff injured her lower back while attempting to

transfer a patient, requiring an emergency room visit and follow-up

treatment from her regular health care provider.  AT 255, 264.  Plaintiff

was initially seen at the East Hill Family Medical Center on May 6, 1999,

two days following her emergency room treatment.  AT 264.  Following an

examination, plaintiff was diagnosed as suffering from "[l]ow back pain,

possibly musculoskeletal strain" and was prescribed Darvocet and advised

to attend physical therapy.  *Id.*  Plaintiff was placed on light duty

restriction, with a recommendation that she not engage in bending or

lifting, and told to return in two to three weeks for re-evaluation.  *Id.*

Plaintiff was again seen at the East Hill Family Medical Center on

May 24, 1999.  AT 262.  During that visit, plaintiff reported that her back

was better but that she was suffering from lower right quadrant pain, the

source of which was not apparent to the examining nurse practitioner.  *Id.*

Plaintiff also noted on that occasion that she had not yet commenced

-4-

physical therapy, despite having been prescribed that course of treatment for her back.  Based upon her examination on that date, Nurse Practitioner Dinah Guarino continued plaintiff on light duty work restriction.  *Id.*

Plaintiff was again seen by Nurse Practitioner Guarino on June 7, 1999, at which time she reported the spontaneous onset of pain in her neck area.  AT 260.  In her office notes of that visit, Nurse Practitioner Guarino remarked that plaintiff had been seen at the Finger Lakes Medical Center, where cervical spine x-rays were taken, revealing no abnormalities.  *Id.*  In her notes of that visit, the nurse practitioner recorded a diagnosis of cervical strain, and prescribed Flexeril, Naprosyn and Tylenol No. 3 for pain.  *Id.*  Plaintiff was also told to continue wearing a cervical collar, and to resume physical therapy for her back as well as to add neck physical therapy.  *Id.*  During that visit the plaintiff, who had been on medical leave for a week, was advised she could return to work, subject to a light duty restriction.  *Id.*

Plaintiff returned to the East Hill Family Medical Center a week later, reporting that her low back pain had improved but that she was still suffering from "quite a bit" of neck pain.  AT 258.  A diagnosis of cervical strain with radiculopathy was made, and plaintiff was told to continue with

-5-

physical therapy and advised to remain out of work for two weeks.  *Id.*
Nurse Practitioner Guarino subsequently referred plaintiff for a CT scan of
her neck to determine whether she was suffering from any nerve
compression, and a resulting rehabilitation examination which was
performed on September 17, 1999.  AT 255-57; *see also* AT 258.  In a
report of that examination, it was noted that both lumbar spine x-rays and
a CT scan of the lumbar spine area revealed no abnormality.  AT 255.
Based upon an examination and review of relevant medical records, a
diagnosis of lumbar strain and cervical pain of uncertain etiology was
noted, and a determination was made that plaintiff's injuries were work-
related.  AT 256-57.

In or about early November of 2000, plaintiff again presented at a
hospital emergency room, complaining of neck pain suffered when, while
reportedly lying in bed, she moved and "heard a crack in her neck."  AT
84.  X-rays taken at the hospital once again proved negative, and plaintiff
was given a soft collar and prescribed both pain medication and muscle
relaxers.  *Id.*

Plaintiff appeared at the East Hill Medical Family Center at
November 16, 2000 for follow-up treatment, reporting continued pain in

the back of her neck, extending to the back of her head and causing

headaches, but without radiation into the arms, numbness or tingling. *Id.*

A diagnosis of cervical strain was made, and plaintiff was once again

referred for physical therapy and prescribed Motrin 400 and Flexeril for

pain. *Id.*

Plaintiff sought medical treatment at the Auburn Hospital Emergency

Room on June 7, 2002, again complaining of acute neck pain. AT 235.

As a result of that visit Darvocet was prescribed, and plaintiff was advised

to keep her appointment with a pain clinic, to rest and use a cervical collar,

and to follow-up with an orthopedist in three to five days. *Id.*

Plaintiff underwent magnetic resonance imaging ("MRI") testing on

February 28, 2001, revealing disc bulging, with minimal cord compression,

at the C4-5 and C5-6 levels. AT 88-90. A subsequent MRI performed on

January 30, 2002 resulted in reiterated findings of bulging at the C4-C5

and C5-C6 levels, but with no cord compression, AT 86; a third MRI,

conducted in 2003, was "negative", according to the plaintiff's treating

physician. AT 145, 147.

Plaintiff's neck pain has been treated with a combination of physical

therapy and medication, as well as through a series of epidural block and

Cortisone injections for relief of pain.  Plaintiff was seen at the Pain Clinic

in 2002, at which time a plan was formulated to provide physical therapy

and a TENS unit, start her on Neurontin, and schedule her for cervical

epidural steroid blocks.  AT 253.  Upon examination, reflecting only

minimal disk bulging, Dr. Ferenc Puskas recommended repeating a series

of cervical epidural steroid blocks.  AT 254.

Plaintiff was referred by her treating physician, Dr. Peter J. Battaglia,

to the Upstate Medical Anesthesiology Group, Inc. for an evaluation and

pain management in or about September of 2003.   AT 253-54.   That

referral resulted in plaintiff undergoing a series of cervical epidural steroid

blocks in late 2003, and again in early 2004.  AT 245-52.

In March of 2003, apparently based in part upon the lack of showing

of significant pathology on testing, including MRIs, Dr. Battaglia began to

consider the diagnosis of fibromyalgia.  AT 145, 147.  On July 7, 2003,

after several more visits, observing "marked trapezius tenderness and

spasm", Dr. Battaglia formally diagnosed the plaintiff as suffering from

fibromyalgia.  AT 149; see also AT 150, 151, 153.  There is no indication,

however, that plaintiff has ever been referred to a neurological specialist

for further evaluation of her fibromyalgia, nor does Dr. Battaglia provide

any specifics in his various reports regarding the existence of trigger points and the extent of plaintiff's symptomology.  *See id.*

At various of the relevant times, plaintiff has also suffered from an abdominal condition, for which she sought emergency treatment on October 2, 2001, December 29, 2001 and January 28, 2002, complaining of acute abdominal pain.  AT 95, 99, 106.  Plaintiff underwent a colonoscopy on July 30, 2001, the results of which were unremarkable.  AT 113-14.  An upper endoscopy examination performed on that same date revealed mild erythema of the antrum, suggestive of gastritis, as well as a moderate-sized hiatal hernia.  *Id.*

On May 23, 2003, apparently in connection with her Workers' Compensation claim, plaintiff was examined by Dr. Amado Santos, of Industrial Medicine Associates, P.C.  AT 132-35.  Based upon his examination, Dr. Santos diagnosed the plaintiff as suffering, *inter alia,* from chronic neck and low back pain, with some right cervical radiculopathy, as well as "[c]hronic right upper quandrum abdominal pain probably functional", and listed a prognosis of good.  AT 135.  Dr. Santos also noted that plaintiff suffers from "mild restrictions" with respect to heavy lifting and carrying as well as repetitive bending, prolonged walking,

or standing.  *Id.*

Despite her impairments, plaintiff reports that she is able to drive; watch television; wash clothes and perform other housework, with the assistance of her children; visit her mother; care for her personal needs; and pick her husband up from work.  AT 62-64, 133, 279.  Plaintiff is also able to shop for groceries, and travels to yard sales between two and three times each week.  AT 64-66.

II.   PROCEDURAL HISTORY

A.   Proceedings Before The Agency

Plaintiff filed an application for SSI benefits on February 11, 2003, alleging disability based upon her back, neck, and stomach conditions extending back to an attributed onset date of November 30, 1999.[3]  AT 34, 45.  Following the denial of that application at the initial review level, *see* AT 24, a hearing was conducted, at plaintiff's request, before ALJ William J. Reddy to address plaintiff's claim for benefits.  *See* AT 269-91. Testifying at that hearing were the plaintiff, who was represented by counsel, and David Sypher, a vocational expert.  *Id.*

---

[3]   An earlier application for SSI benefits, filed by the plaintiff on October 18, 2001, was denied.  AT 11.  Plaintiff does not appear to have pursued that earlier application further through the administrative process.  *Id.*

On August 24, 2004, ALJ Reddy issued a written decision finding that plaintiff was not disabled, and accordingly denying her claim for benefits.  AT 11-19.  After conducting a *de novo* review of plaintiff's application, informed by the medical and other evidence amassed and the testimony adduced, ALJ Reddy applied the now familiar five part sequential test for determining disability, concluding at step one that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date.  AT 12.  At steps two and three of the disability algorythim, the ALJ concluded that plaintiff's neck and low back pain, and fibromyalgia, were impairments of sufficient severity to significantly restrict her ability to perform basic work activities, AT 12, but that they did not meet or equal the listed, presumptively disabling impairments set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, AT 13.  In making that determination, ALJ Reddy discounted plaintiff's abdominal condition as not of sufficient severity to meet the step two test, finding that objective testing had revealed only the presence of mild gastritis and a moderate hiatal hernia, with no medical evidence which would suggest that they pose more than minimal limitations on her ability to perform work functions.  AT 13.

Before proceeding to step four of the sequential analysis, ALJ Reddy determined that despite the limitations imposed by her medical conditions, plaintiff retains the residual functional capacity ("RFC") to perform the exertional demands of sedentary work, provided that she is permitted to alternate between sitting and standing at will, and is not required to perform repetitive bending or overhead reaching.  AT 14.  In making that determination, ALJ Reddy relied upon medical evidence in the record, including reports generated by treating and evaluating physicians, and rejected plaintiff's subjective testimony, to the extent that it was inconsistent with that finding, as not fully credible based both upon the lack of objective medical evidence suggesting that her impairments are of sufficient severity to cause the symptoms reported, and upon the extent of plaintiff's daily activities.  AT 14-15.  Applying that RFC, ALJ Reddy determined that plaintiff is unable to perform her past relevant work in light of its heavy exertional requirements but, relying upon the testimony of a vocational expert and utilizing the medical-vocational guidelines (the "grid") set forth in the applicable regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2 as a framework, nonetheless concluded that there is available work within the national and local economies which plaintiff is capable of

performing including, *inter alia,* as a surveillance system monitor and a

food and beverage order clerk.  AT 16-17.  ALJ Reddy thus concluded that

plaintiff is not disabled and, accordingly, denied her application for SSI

benefits.  AT 18-19.  ALJ Reddy's opinion became a final determination of

the agency when, on February 2, 2005, the Social Security Administration

Appeals Council denied her request for review of that decision.  AT 3-5.

B.    This Action

Plaintiff commenced this action on March 31, 2005.  Dkt. No. 1.

Issue was thereafter joined on May 20, 2005 by the Commissioner's filing

of an answer, accompanied by a copy of an administrative transcript of the

proceedings and evidence before the agency.  Dkt. Nos. 5, 6.  With the

filing on July 5, 2005 of plaintiff's brief, Dkt. No. 7, and that on behalf of the

Commissioner on July 26, 2005, Dkt. No. 8, the matter is now ripe for

determination, and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[4]  *See also* Fed. R. Civ. P. 72(b).

_____

[4]      This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998,
and subsequently amended and reissued by Chief District Judge Frederick J. Scullin,
Jr., on September 12, 2003.  Under that General Order an action such as this is
considered procedurally, once issue has been joined, as if cross-motions for judgment
on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil

III.   <u>DISCUSSION</u>

   A.   <u>Scope of Review</u>

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859

_____

Procedure.

-14-

F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314

(N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record. *Id.*;

*Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*).  "To determine on

appeal whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must

also include that which detracts from its weight."  *Williams*, 859 F.2d at

258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S.

Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

-16-

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . "  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

-17-

from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728

-18-

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>The Evidence In This Case</u>

        1.    <u>Development of the Record</u>

In her challenge to the agency's determination, plaintiff maintains that the ALJ failed to resolve "significant gaps" in the record.  In support of this argument, plaintiff cites three distinct record voids, based upon the failure to obtain records 1) of her treatment at a pain clinic, despite efforts by the state agency to do so; 2) generated based upon her referral by Dr. Zhang to Dr. Fredrickson, a spine surgeon, *see* AT 248; and 3) from a neurosurgeon whose name does not appear in the record – and, indeed, is not mentioned in plaintiff's brief – to whom she was apparently referred by either Dr. Battaglia or the pain clinic, *see* AT 153.

When confronted with a claim for social security benefits, an ALJ is tasked by statute with the responsibility to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, and additionally "to gather such information for a longer period if there is [reason] to believe that the information is [necessary] to reach a decision."  *DeChirico v. Calahan,* 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B), as incorporated by 42

U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)).  The applicable
regulations supplement this requirement, directing that an ALJ subpoena a
prior disability file pertaining to a claimant if deemed "reasonably
necessary for the full preservation of [the] case."  *DeChirico,* 134 F.3d at
1184 (citing 20 C.F.R. § 416.1450(d)(1)).

Ordinarily, these obligations are most critical in a case where the
claimant is unrepresented by counsel.  *See, e.g., Mimms v. Heckler*, 750
F.2d 180, 185 (2d Cir. 1984).  To be sure – as plaintiff now argues – the
duty to faithfully develop the record nonetheless exists even in instances
where a claimant is represented, owing from the fact that such
proceedings are not viewed as adversarial in nature.  *Gecevic v. Sec'y of
Health and Human Servs.* 882 F. Supp. 278, 287 (E.D.N.Y. 1995).  It is
significant, however, that in this case the plaintiff, though represented by
an attorney who had reviewed the medical records adduced during the
hearing, failed to point out this deficiency to the ALJ or request that the
hearing be held open in order to permit additional medical records to be
secured.

Upon careful review of the record, considered in light of the
arguments raised by the plaintiff concerning development of the record, I

find no gaps which can properly be regarded as critical, and which the

agency failed to take appropriate measures to fill.  The record reflects that

the sister state agency requested records from the pain clinic which the

plaintiff claimed to attend, receiving back in response only a statement

advising that those records did not exist.  AT 131.  While plaintiff now

contends that the agency should have sought those records by inquiring

using her maiden name, Judy Spinosa, the records were properly

requested utilizing the name referenced in her application for benefits, as

well as the social security number and address given by her to the

agency.  *See id.; see also* AT 34.  This effort, coupled with the silence of

plaintiff and her attorney during the hearing regarding this void and the

lack of any offer of assistance in securing the disputed records, fails to

convince the court that there is any critical gap which the ALJ failed to fill.[5]

---

[5]      It should be noted that this is not the only confusion which has existed
regarding plaintiff's attendance at the pain clinic.  In a note of an office visit, dated
August 13, 2003, Dr. Battaglia recorded the following observation:

> The patient has had referrals to Camillus Pain Clinic.  The
> patient states that they never called her.  The chart states
> that they have called her on multiple occasions and the
> nurse states that she has called her on multiple occasions
> and never had there been any appropriate communication.
> The patient apparently has just ignored the situation.  The
> patient states that this is not correct and it is total error.

AT 150.

The agency's failure to obtain and consider a missing report of an examination by Dr. Fredrickson, on referral, similarly fails to result in any legally significant gap.  Not only did that evaluation occur in or about March of 2004, and thus after the filing of plaintiff's application for benefits but, significantly, a progress note from Dr. Jianming Ren reveals that Magee had only one appointment with Dr. Fredrickson, who determined that she was not a suitable candidate for surgery given her age and symptomology.  AT 247.  Accordingly, since the information which would otherwise have been contained in Dr. Fredrickson's report of this isolated evaluation is summarized in the administrative record, there is no gap warranting a remand.

Plaintiff's claim regarding the failure to secure records from a neurosurgeon to which she was apparently referred also is easily resolved.  Since plaintiff has neither provided the name of that neurosurgeon nor indicated that she actually saw the doctor recommended, and no mention was made of this referral during the hearing, it is difficult to fathom how the ALJ could have been reasonably expected to take measures to fill this gap in the administrative record.

In sum, I find no basis to conclude that the ALJ in this case shirked

his responsibility to fully develop the record before determining the question of plaintiff's disability.

     2.   <u>Treating Physician</u>

Plaintiff next contends that the ALJ's evaluation of medical evidence in the record, including reports generated by her treating physicians, was improper.  Plaintiff specifically challenges the ALJ's rejection of opinions of her treating physicians in conflict with his finding of no disability as neither appropriate nor properly explained.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[6]  Such opinions are not controlling,

---

[6]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

however, if contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-

---

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

17.    Plaintiff bases her argument regarding rejection of treating source

opinions on the ALJ's refusal to accept a statement of Dr. Danielle Katz,

dated February 11, 2002, to the effect that the plaintiff "should not do any

pushing, pulling, bending, lifting", AT 130, and a second similar statement

from Nurse Practitioner Dinah Guarino, dated May 16, 1999, to the effect

that the plaintiff should be limited to "[l]ight duty at work, no bending or

lifting, . . . ."[7]  AT 264.  There are several reasons why the ALJ's failure to

find, based upon these reports, that plaintiff is not capable of performing

even the modest lifting requirements of sedentary work was not improper.

First, neither of these reports was rendered during the relevant time period

between the alleged disability onset date as reported on plaintiff's

application for benefits, or November 30, 1999, and the ALJ's decision on

August 24, 2004, the relevant time period during which disability must

exist in order to establish entitlement to benefits.  *See* 20 C.F.R. §

---

[7]    In his decision, ALJ Reddy assumed that despite the lack of records disclosing the specifics surrounding her role in plaintiff's care and treatment, Dr. Danielle Katz qualified as a treating physician under the regulations.  *See* AT 15 (referring to Dr. Katz as "[a] presumably treating physician. . ."). From the evidence in the record it is at best questionable whether Dr. Katz could in fact satisfy the requirements for being considered as a treating physician, since a February 11, 2002 summary entry on an Upstate Hospital pharmacy prescription form was the only record from Dr. Katz before the agency, with no indication that her treatment of the plaintiff was ongoing and extended over a significant period, as required in order to qualify her as a treating source whose opinion is entitled to special deference.  *See* 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i); *see also Schisler*, 3 F.3d at 568.

404.1512(c). To the extent plaintiff may be arguing that these statements bear upon her capabilities during the relevant times, there is no evidence, medical or otherwise, in the record to link those reports to her condition during the relevant times.  Indeed, the cited excerpts do not even represent RFC assessments, nor do they reflect whether the limitations noted were viewed as transitory, or instead anticipated to extend for a prolonged period.

It should also be noted that the statements at issue do not unequivocally purport to establish the outer limits of plaintiff's capabilities. Instead, at best they constitute recommendations at least one of which was apparently rendered in the context of returning plaintiff to perform "light work."  In that regard it should be noted, moreover, that Dr. Katz, in making her statement, did not limit plaintiff to performing work at any exertional level, nor did she impose any limitation with regard to sitting. AT 130.  Similarly, Nurse Practitioner Guarino, while stating that plaintiff should not bend or lift, indicated that she was capable of returning to light work, similarly concluding in other reports that she was capable of performing light work, and notably did not assess any restriction on lifting. *See, e.g.* AT 260 (6/7/99) and 262 (5/24/99).

-26-

There is yet another reason why the opinions of Nurse Practitioner Guarino were not entitled to deference under the treating physician rule. While the ALJ, in his decision, mistakenly refers to her as a doctor, *see,* AT 15, the facts reflect that she is a nurse practitioner.  Accordingly, Nurse Guarino does not constitute an acceptable medical source, and her opinion is not entitled to the same degree of deference provided to treating source opinions.  20 C.F.R. § 404.1513; *see also Williams v. Comm'r of Soc. Sec.*, 423 F. Supp. 2d 77, 83 n.5 (W.D.N.Y. 2006).

In sum, the ALJ's decision not to accord deference to the opinions of Nurse Practitioner Guarino and Dr. Katz, rendered outside of the relevant time period, and not generated for the purpose of expressing opinions regarding plaintiff's  RFC, and to nonetheless conclude that plaintiff is not precluded from performing any lifting, even that modest amount associated with sedentary work, was not improper.

### 3.   Plaintiff's RFC

The foundation for ALJ Reddy's finding of no disability is his conclusion regarding plaintiff's RFC.  Plaintiff maintains that the RFC determination was erroneous, both because it overstates her lifting capacity, and since it does not adequately take into account and specify

the frequency associated with the requirement that she change positions.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record

-28-

to support each requirement listed in the regulations.  *Martone*, 70 F.

Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183

(N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10

(E.D.N.Y. 1997).

Addressing plaintiff's RFC, ALJ Reddy determined that she is

capable of meeting the exertional requirements of sedentary work,

provided that she not be required to perform repetitive bending or

overhead reaching, and additionally that she be afforded the ability to

alternate sitting and standing at will.[8]

The ALJ's finding that plaintiff can meet the lifting requirements of

sedentary work is well-supported.  In his report, based upon a consultative

examination, Dr. Santos remarked that plaintiff had only "mild" restriction

---

[8]     Sedentary work is defined by regulation as follows:

Sedentary work involves lifting no more than 10 pounds at a
time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools.  Although a sedentary job is
defined as one which involves sitting, a certain amount of
walking and standing is often necessary in carrying out job
duties.  Jobs are sedentary if walking and standing are
required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In addition, a subsequent ruling has clarified that sedentary
work generally involves periods of standing or walking for a total of two hours in an
eight hour work day, with sitting up to a total of approximately six hours in a similar
period.  *See* Social Security Ruling 83-10.

with regard to heavy lifting and carrying in light of her neck pain.  AT 135.
And, while mentioning restrictions on the repetitive bending, prolonged
walking, and standing resulting from her low back pain, that consultant did
not make reference to any additional lifting and carrying limitations
associated with that condition.  *Id.*  These conclusions are fully supported
by the results of Dr. Santos' examination of the plaintiff, *see* AT 133-34,
and also are consistent with reports of Dr. Battaglia, based upon his
examinations during the relevant time period.  *See, e.g.,* AT 145, 147-49.

Plaintiff maintains that the ALJ's RFC finding is deficient, in that it did
not specify the frequency with which she must be able to alternate sitting
and standing, in her work setting, as required by SSR 96-9P.  It should be
noted, as the Second Circuit has remarked, that "[t]he regulations do not
mandate the presumption that all sedentary jobs in the United States
require the worker to sit without moving for six hours, trapped like a seat-
belted passenger in the center seat on a transcontinental flight."  *Halloran*,
362 F.3d at 33.  In assessing the plaintiff's RFC, ALJ Reddy specifically
stated that in any position plaintiff must be able to alternate sitting and
standing "at will."  *See* AT 16.  This finding of required flexibility with
respect to sitting and standing, moreover, was built into the hypothetical

-30-

which led vocational expert David Sypher to conclude that there were at

least two jobs in sufficient numbers in the national local economy of which

plaintiff was capable of performing.  AT 288-89.

Plaintiff's argument in this regard is predicated in large part upon the

court's decision in *Dailey v. Barnhart,* 277 F. Supp. 2d 226 (W.D.N.Y.

2003).  That case, however, is readily distinguishable since, unlike the

circumstances now presented, the ALJ's decision there was based upon

application of the grid, without consultation of a vocational expert or other

similarly competent source to determine the extent of occupational base

erosion due to the need for the claimant in that case to alternate sitting

and standing.  *Dailey*, 277 F. Supp. 2d at 237-38.  In this case, by

contrast, the vocational expert was consulted and specifically asked what,

if any, impact the need to frequently and freely change positions would

have upon erosion of the occupational job base found to be available to

accommodate plaintiff's condition.  The ALJ's determination thus did not

run afoul of governing legal principles, including those articulated in SSR

96-9P.

        4.      <u>Testimony of Vocational Expert</u>

      In an extension of her RFC argument, plaintiff maintains that the

ALJ's error was compounded when testimony was elicited from the testifying vocational expert based upon an unsupported hypothetical question.

It is well established that elicitation of testimony from a vocational expert is a proper means of fulfilling the agency's burden at step five of the disability test to establish the existence of jobs in sufficient numbers in the national and regional economy that plaintiff is capable of performing. *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1566, 416.966. Use of hypothetical questions to develop the vocational expert's testimony is also permitted, provided that the questioning precisely and comprehensively includes each physical and mental impairment of the claimant accepted as true by the ALJ.  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability.  *Id.*

Inasmuch as I have determined that the ALJ's RFC finding was supported by substantial evidence, and the hypothetical posed to Vocational Expert Sypher was congruent with that RFC finding, I find no error in the finding of no disability based upon the vocational expert's testimony.

As an adjunct to this argument, plaintiff argues that with only two occupations available to accommodate her limitations, the base of available jobs was sufficiently eroded in her case to preclude a finding of no disability, citing *Kuleszo v. Barnhart,* 232 F. Supp. 2d 44 (W.D.N.Y. 2002), in support of that argument.  That case is readily distinguishable, however, the court in that instance finding that the two jobs identified by the vocational expert in fact exceeded plaintiff's RFC and that the vocational expert's testimony regarding the positions was inconsistent with the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") (4th Ed. Rev. 1991).  *See Kuleszo,* 232 F. Supp. 2d at 55-56.

In any event, unfortunately for the plaintiff, another judge of this court has considered and rejected the categorical rule intimated in *Kuleszo,* to the effect that the availability of a single sedentary occupation might constitute a *per se* showing of disability.  *Colon v. Comm'r of Soc.*

*Sec.,* No. 6:00-CV-0556, 2004 WL 1144059 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).  In his decision in *Colon,* District Judge Gary L. Sharpe noted that SSR 96-9P specifically advises that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled'."  2004 WL 1144059, at *9. Judge Sharpe went on in that case to conclude that a vocational expert's opinion of the existence of only one sedentary occupation available to the plaintiff, given her limitations – in that case as a surveillance system monitor – while an indication that the claimant's full range was significantly eroded, did not mandate a finding of disability.  *Id.*  In this instance, as in *Colon*, the vocational expert found that plaintiff was able to work as a surveillance system monitor; unlike *Colon,* however, Vocational Expert Sypher also opined that the plaintiff in this instance is capable of working as a food and beverage order clerk, with a substantial number of positions falling in that category available in the national, state and local economies. *See* AT 288-89.  The vocational expert in this case testified regarding two positions capable of being performed by the plaintiff, including as a surveillance system monitor, with 9500 positions nationally and 140 regionally, and as a food and beverage order clerk, a position with

338,000 openings nationally and 68,000 regionally.  AT 289.  These

numbers adequately support the ALJ's finding that there exists work

capable of being performed by the plaintiff in sufficient numbers in the

national and local economies to support a finding of no disability.  *See Hall*

*v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (concluding that 1350 jobs in

local economy was sufficient to demonstrate that plaintiff could find other

work); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (concluding

that 500 jobs in local economy was a sufficient number).

In sum, the vocational expert's opinion provides support for the

conclusion that the Commissioner carried his burden at step five of the

disability catechism.


5.    Plaintiff's Credibility

The last point raised in support of her challenge to the ALJ's finding

of no disability concerns the rejection of her claims of disabling pain as not

being credible.  *See* AT 14-15.  That rejection was based principally upon

the lack of supporting medical evidence reflecting the existence of a

condition which could be reasonably be expected to result in limitations

testified to by the plaintiff in her ability to stand and to sit, as well as the

extent of her daily activities.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*. See Mimms,* 750 F.2d at 185-86.  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)). In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment

-36-

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[9]  *Barnett*, 13 F. Supp. 2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

then the ALJ must consider additional factors in order to assess that

testimony, including: 1) daily activities; 2) location, duration, frequency and

intensity of any symptoms; 3) precipitating and aggravating factors; 4)

type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve

symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

       After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must explicitly state the basis for

doing so with sufficient particularity to enable a reviewing court to

_____

       [9]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

determine whether those reasons for disbelief were legitimate, and

whether the determination is supported by substantial evidence. *Martone*,

70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human

Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree

of discomfort as a result of her back condition.  The fact that she suffers

from discomfort, however, does not automatically qualify her as disabled,

since "disability requires more than mere inability to work without pain."

*Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In this instance, while plaintiff clearly suffers from a medically

determinable impairment, her reports of pain symptoms and

corresponding limitations are far more extensive than the objective

evidence alone would suggest.  Accordingly, the ALJ was required to give

consideration to other relevant factors, including plaintiff's daily activities,

the nature of her symptoms, and the medication and/or other treatment

administered to alleviate her symptomology, in order to assess her

credibility.  20 C.F.R. § 416.929(c)(3); *see also Tornatore v. Barnhart*, No. 05 Civ. 6858, 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006).

Considering the evidence before him, the ALJ found, plaintiff's reported symptomology to be wholly inconsistent with the extent of her daily activities, as well as the conservative course of treatment followed over time.   In contrast to her statements during the hearing, in her reports to the agency plaintiff indicated that she does all of the housework on her own, including cooking, cleaning, laundry, and shopping.  AT 62, 64-65, 279-80.  It was also noted that at the hearing that while plaintiff now claims to have difficulty in sleeping, she reported on two separate occasions to her physician that she sleeps well with her medications.  AT 146, 152, 247; *but see* AT 144 (note dated 3/14/03 from Dr. Battaglia indicating that "[t]he patient is having marked difficulty sleeping.").

I find, based upon review of the record, that the ALJ's determination that plaintiff's reports of her symptomology are not wholly credible is both well-articulated, and supported by substantial evidence in the record.

IV.    SUMMARY AND RECOMMENDATION

_____While the medical evidence in the record, which is relatively sparse, supports the conclusion that plaintiff suffers from medically determinable

conditions, including principally chronic cervical neck and lower back pain,

the ALJ's conclusion that despite her condition she is capable of fulfilling

the exertional requirements of sedentary work, provided that she is able to

change positions between sitting and standing at will, and additionally

cannot perform repetitive bending or overhead reaching, is supported by

substantial evidence in the record.  And, since the finding of disability

resulted from the testimony of the vocational expert based upon a

hypothetical closely approximating plaintiff's RFC and a finding that jobs in

sufficient numbers exist in the national and local economies which plaintiff

is capable of performing, the ALJ's determination of no disability was

proper.  It is therefore hereby

RECOMMENDED, that defendant's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no

disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within

which to file written objections to the foregoing report.  Such objections

shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS

REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*,

984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties in accordance with this

court's local rules.


Dated:      June 12, 2007
            Syracuse, NY



David E. Peebles
U.S. Magistrate Judge