**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JUDY C. MAGEE,**

                                        **Plaintiff,**

              **v.**                                    **5:05-CV-413**
                                                         **(FJS/DEP)**

**MICHAEL J. ASTRUE,**

                                        **Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**OLINSKY & SHURTLIFF, LLP**             **JAYA SHURTLIFF, ESQ.**
300 South State Street, 5th Floor
Syracuse, New York 13202
Attorneys for Plaintiff

**OFFICE OF THE UNITED**                 **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
James Hanley Federal Building
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Currently before the Court are Magistrate Judge Peebles' Report and Recommendation

and Plaintiff's objections thereto.


### II. BACKGROUND

       Plaintiff was born on May 27, 1974; and, at the time of the administrative hearing, she

was thirty years old.  *See* Administrative Transcript ("Tr.") at 12, 34.  Plaintiff has not been

employed since November 30, 1999, as a result of an injury to her lower back in May of 1999,

which she suffered in the course of her duties as a nurse's assistant.  *See id.* at 255, 264, 273.

Since the injury, Plaintiff has sought and received medical treatment, has consulted different

physicians on numerous occasions, and has been diagnosed with various conditions, including

chronic neck and back pain, fibromyalgia, irritable bowel syndrome, and a hiatal hernia.

Moreover, since the onset of her injuries, Plaintiff has sought and undergone various forms of

treatment, including taking prescription drugs, attending physical therapy, wearing a soft collar

around her neck, and undergoing a series of epidural block and Cortisone injections for relief of

pain.

Despite her injuries, Plaintiff has been able to perform a variety of activities, including

driving an automobile, watching television, performing various household tasks, visiting her

mother, picking up her husband at work, shopping for groceries, and traveling to yard sales two

or three times each week.

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on

February 11, 2003, alleging disability based on her injuries, which was denied at the initial

review level.  Plaintiff requested a hearing before an Administrative Law Judge, which was held

on July 27, 2004.  In a decision dated August 24, 2004, the ALJ determined that Plaintiff was not

disabled and, therefore, denied her application for benefits.  The ALJ's decision became the

Commissioner's final determination on February 2, 2005, when the Social Security

Administration Appeals Council denied Plaintiff's request for review of that decision.

Plaintiff commenced this action on March 31, 2005, seeking judicial review of that final

decision.  She argued that the ALJ had erred because he (1) failed to obtain medical records to

fill critical gaps in the evidence; (2) misinterpreted and/or improperly discounted the opinions of

her treating physician; (3) failed to specify the frequency of her need to alter positions when

determining her residual functional capacity ("RFC"); (4) improperly relied on the testimony of a

vocational expert, both because that testimony was based on an unsupported hypothetical that did

not approximate Plaintiff's condition and because it reflected the lack of a sufficient number of

jobs in the national and local economies that she could perform; and (5) improperly rejected, as

not entirely credible, her subjective testimony about her disabling pain without providing a

proper explanation or support for doing so.  *See* Report and Recommendation at 2-3.  After

considering the ALJ's decision in light of Plaintiff's arguments, Magistrate Judge Peebles found

that the ALJ applied the correct legal principles and that there was substantial evidence in the

record to support the ALJ's determination.  *See id.* at 3.

Plaintiff objects to Magistrate Judge Peebles' affirmance of the ALJ's decision for several

reasons.  First, Plaintiff contends that Magistrate Judge Peebles improperly supplied "after the

fact" reasoning and rationale to support the ALJ's determination.  *See* Plaintiff's Objections at 1-

2.  Second, Plaintiff argues that Magistrate Judge Peebles erred by shifting the burden of

developing the record from the ALJ to Plaintiff's attorney.  *See id.* at 2-3.  Plaintiff also contends

that Magistrate Judge Peebles applied the incorrect legal standard by failing to find that an RFC

assessment must specify the frequency with which a claimant needs to alternate between sitting

and standing.  *See id.* at 3-4.  Lastly, Plaintiff argues that Magistrate Judge Peebles erred when he

relied upon the fact that Plaintiff's physicians had prescribed a "conservative course of treatment"

to undermine Plaintiff's credibility.  *See id.* at 4-5.

## III. DISCUSSION

**A.     Standard of review**

In reviewing the Commissioner's final decision, a court must determine whether the Commissioner applied the correct legal standards and whether there is substantial evidence in the record as a whole to support the decision. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)) (other citations omitted). A reviewing court, however, may not affirm an ALJ's decision if it reasonably doubts that the ALJ applied the proper legal standards even if it appears that there is substantial evidence to support that decision. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports his decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support that decision. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (citations omitted). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quotation omitted). "It is more than a mere scintilla or a touch of proof here and there in the record." *Id.*

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its

weight." *Id.* (citations omitted).  "However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision."  *Lewis v. Comm'r of Soc. Sec.*, No. 6:00 CV 1225, 2005 WL 1899399, *1 (N.D.N.Y. Aug. 2, 2005) (citations omitted).

Finally, in a case such as this one in which a magistrate judge has issued a Report and Recommendation and a party has properly filed objections to that report, "the district court shall make a *de novo* determination of those portions of the report to which the objections are made[,]" 28 U.S.C. § 636(b)(1)(C), and shall review those portions of the report to which neither party objects for clear error, *see Turly v. Britton*, No. 9:03-CV-1425, 2007 WL 625983, *2 (N.D.N.Y. Feb. 24, 2007).


**B.   Plaintiff's claim that Magistrate Judge Peebles relied on "after the fact" reasoning**

Plaintiff complains, in general terms, that Magistrate Judge Peebles erred because he supplied "after the fact" reasoning and rationale as a basis for upholding the ALJ's findings.  *See* Plaintiff's Objections at 1.  The only specific example of this alleged type of erroneous reasoning to which Plaintiff points is the following:

> in rejecting [Plaintiff's] argument that the Treating Physician Rule was not followed by the ALJ, the Magistrate Judge stated there were "several reasons why the ALJ's failure to find . . . that plaintiff is not capable of performing even the modest lifting requirements of sedentary work was not improper . . ." [Report and Recommendation, pg. 25].  The Magistrate Judge then supplied reasons that were not articulated by the ALJ [Report and Recommendation, pgs. 25-26].  The Magistrate Judge concluded that excerpts of treating source medical opinions that stated functional limitations "do not even represent RFC assessments, nor do they reflect whether the limitations noted were viewed as

transitory, or instead anticipated to extend for a prolonged period"
[Report and Recommendation, pg. 26].

*See id.* at 1-2.

This reasoning to which Plaintiff refers as "after the fact" and to which she takes exception is nothing more than Magistrate Judge Peebles' statement that there were several reasons to support his conclusion that Plaintiff's argument regarding the ALJ's rejection of her treating physicians' opinions was not well founded. Magistrate Judge Peebles began his analysis of this issue by noting that

> Plaintiff base[d] her argument regarding rejection of treating
> source opinions on the ALJ's refusal to accept a statement of Dr.
> Danielle Katz, dated February 11, 2002, to the effect that the
> plaintiff "should not do any pushing, pulling, bending, lifting", AT
> 130, and a second similar statement from Nurse Practitioner Dinah
> Guarino, dated May 16, 1999, to the effect that the plaintiff should
> be limited to "[l]ight duty at work, no bending or lifting, . . . ."

*See* Report and Recommendation at 25 (footnote omitted).

Magistrate Judge Peebles could have ended his analysis after stating that neither of the reports upon which Plaintiff relied to support her argument "was rendered during the relevant time period between the alleged disability onset date as reported on plaintiff's application for benefits, or November 30, 1999, and the ALJ's decision on August 24, 2004, the relevant time period during which disability must exist in order to establish entitlement to benefits." *See id.* (citing 20 C.F.R. § 404.1512(c)). However, in the interest of completeness, Magistrate Judge Peebles further explained that, "[t]o the extent plaintiff may be arguing that these statements bear upon her capabilities during the relevant times, there is no evidence, medical or otherwise, in the record to link those reports to her condition during the relevant times." *See id.* at 26.

-6-

Plaintiff does not dispute that both these statements are correct.  Instead, she seeks remand based upon the fact that Magistrate Judge Peebles chose to list alternative reasons that would support the ALJ's rejection of the opinions of these two medical sources.

The Court finds that Plaintiff's argument is without merit.  Not only did Magistrate Judge Peebles not engage in "after the fact" reasoning but it would have been improper for the ALJ to rely upon medical opinions that did not relate to Plaintiff's condition during the relevant time period.  Accordingly, the Court affirms Magistrate Judge Peebles' conclusion that the ALJ's decision not to accord deference to the opinions of Nurse Practitioner Guarino and Dr. Katz was proper.

**C.    Plaintiff's complaint that Magistrate Judge Peebles inappropriately shifted the burden of developing the record from the Administrative Law Judge to Plaintiff and her attorney**

Plaintiff contends that Magistrate Judge Peebles shifted the ALJ's duty to develop the record onto Plaintiff and her attorney.[1]  To support this argument, Plaintiff points to Magistrate Judge Peebles' statement that "'[i]t is significant, however, that in this case the plaintiff, though represented by an attorney who had reviewed the medical records adduced during the hearing, failed to point out this deficiency to the ALJ or request that the hearing be held open in order to permit additional medical records to be secured' . . . ."  *See* Plaintiff's Objections at 2-3 (quoting Report and Recommendation, pg. 20).  Plaintiff not only takes this statement out of context but

_____

[1] In this section of her Objections, Plaintiff states that "[i]t was contrary to the appropriate legal standards for the **ALJ** to shift the Administrative Law Judge's duty to develop the record onto the claimant and her attorney."  *See* Plaintiff's Objections at 3 (emphasis added).  The Court assumes that the bolded text "ALJ" is a typographical error and that this text should read "Magistrate Judge."

there is also nothing in Magistrate Judge Peebles' Report and Recommendation to support Plaintiff's contention that Magistrate Judge Peebles shifted the ALJ's burden to develop the record onto Plaintiff and her attorney.

As Plaintiff acknowledges, Magistrate Judge Peebles noted that the ALJ has "the responsibility to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, and additionally 'to gather such information for a longer period if there is [reason] to believe that the information is [necessary] to reach a decision.'" *See* Report and Recommendation at 19 (quoting *DeChirico v. Calahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B), as incorporated by 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d))).

In her memorandum of law, Plaintiff argued that, because there were multiple references to Plaintiff's treatment at the pain clinic, the ALJ,

> [i]n addition to his independent duty to obtain these records, . . . should have been alerted to the need to obtain them because they were requested by the state agency on behalf of the Social Security Administration . . . [and] [a]lthough the request was sent to "Judy Magee" and was returned with a note that the pain clinic had no records on "Judy Magee", the ALJ should have inquired as to the existence of records under the name "Judy Spinosa," the name Magee was known by at least through November 2002 . . . .

*See* Plaintiff's Memorandum of Law at 12 (internal citations omitted).

Magistrate Judge Peebles concluded that the agency had properly requested the pain clinic records using "the name referenced in [Plaintiff's] application for benefits, as well as the social security number and address given by her to the agency" and that "[t]his effort, coupled with the silence of [P]laintiff and her attorney during the hearing regarding this void and the lack

-8-

of any offer of assistance in securing the disputed records" did not convince him that there was a critical gap that the ALJ had failed to fill. *See* Report and Recommendation at 21 (citations and footnote omitted).

Magistrate Judge Peebles also found that there was no gap regarding Dr. Fredrickson's examination of Plaintiff for two reasons. First, Dr. Frederickson's evaluation occurred in or about March 2004, after Plaintiff filed her application for benefits. *See* Report and Recommendation at 22. Second, and more significantly, there was no gap because the information that would have been contained in Dr. Frederickson's report was summarized in "a progress note from Dr. Jianming Ren [which] reveal[ed] that [Plaintiff] had only one appointment with Dr. Frederickson, who determined that she was not a suitable candidate for surgery given her age and symptomology." *See id.*

Finally, with respect to Plaintiff's claim regarding the ALJ's failure to secure records from a neurosurgeon to whom she was apparently referred, Magistrate Judge Peebles noted that Plaintiff "neither provided the name of that neurosurgeon nor indicated that she actually saw the doctor recommended . . . [nor made any] mention . . . of this referral during the hearing . . . ." *See id.* Thus, Magistrate Judge Peebles concluded that it was "difficult to fathom how the ALJ could have been reasonably expected to take measures to fill this gap in the administrative record." *See id.*

It is interesting to note that Plaintiff does not take issue with any of Magistrate Judge Peebles' findings regarding these specific gaps, which are the only ones to which Plaintiff points in her memorandum of law. Instead, in objecting to Magistrate Judge Peebles' ultimate conclusion that there were no gaps that the ALJ did not fill, she clings to his one statement at the

beginning of his analysis that neither Plaintiff nor her attorney pointed to any gaps in the record to support her argument that Magistrate Judge Peebles shifted the ALJ's burden to develop Plaintiff's medical record to Plaintiff and her attorney.  As Magistrate Judge Peebles' thorough discussion of the three alleged gaps in the record demonstrates, Plaintiff's objection has no merit. Accordingly, the Court agrees with Magistrate Judge Peebles that there is "no basis to conclude that the ALJ in this case shirked his responsibility to fully develop the record before determining the question of [P]laintiff's disability."  *See* Report and Recommendation at 22-23.


D.     **Plaintiff's claim that Magistrate Judge Peebles applied and upheld an inappropriate legal standard with regard to Plaintiff's Residual Functional Capacity**

Plaintiff argues that Magistrate Judge Peebles erred when he concluded that the ALJ's finding that Plaintiff must shift positions "at will" and the ALJ's use of the terms "frequently" and "freely" in his hypothetical met the requirement that an ALJ's RFC determination must be specific with regard to the frequency of an individual's need to alternate between sitting and standing.  *See* Plaintiff's Objections at 4.

Magistrate Judge Peebles noted that the ALJ determined that Plaintiff was "capable of meeting the exertional requirements of sedentary work, provided that she [was] not . . . required to perform repetitive bending or overhead reaching, and additionally that she be afforded the ability to alternate sitting and standing at will."  *See* Report and Recommendation at 29 (footnote omitted).  Magistrate Judge Peebles concluded that the ALJ's finding that Plaintiff could meet the lifting requirements needed for sedentary work was well supported.  *See id.*

Regarding the issue of the frequency with which Plaintiff must be able to alternate sitting

and standing, Magistrate Judge Peebles found that the ALJ "specifically stated that in any position [P]laintiff must be able to alternate sitting and standing 'at will.'"  *See id.* at 30 (citing AT 16).  Magistrate Judge Peebles concluded that "[t]his finding of required flexibility with respect to sitting and standing . . . was built into the hypothetical which led vocational expert David Sypher to conclude that there were at least two jobs in sufficient numbers in the national [and] local economy of which [P]laintiff was capable of performing."  *See id.* at 30-31 (citing AT 288-89).

Magistrate Judge Peebles noted that the medical evidence that Doctors Santos and Battaglia presented supported the ALJ's finding that Plaintiff could meet the exertional requirements of sedentary work.  *See* Report and Recommendation at 29-30.  Moreover, in reviewing the ALJ's determination of Plaintiff's RFC, Magistrate Judge Peebles found that the ALJ's RFC assessment did not need to specify the frequency with which a claimant needs to alternate between sitting and standing.  *See id.* at 30.  Finally, Magistrate Judge Peebles determined that the ALJ's RFC assessment was consistent with governing legal principles because he consulted a vocational expert to help determine the frequency with which Plaintiff needed to switch between positions.  *See id.* at 31.

An ALJ determines a claimant's RFC by assessing all the relevant evidence in the record, which includes a finding of what tasks a claimant can perform notwithstanding her impairments.  *See* 20 C.F.R. § 404.1545(a).  When making an RFC determination, the ALJ must assess the claimant's exertional capabilities, including the claimant's ability to sit, stand, walk, lift, carry, push and pull.  *See* 20 C.F.R. § 404.1545(b).  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's

capacities are not sufficient." *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728

F.2d 582, 587 (2d Cir. 1984)).  In order for a court to uphold the ALJ's RFC determination on

review, there must be substantial evidence in the record to support that determination.  *See id.*

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).

        According to Social Security Ruling 96-9p, "[t]he RFC assessment must be specific as to

the frequency of the individual's need to alternate between sitting and standing."  SSR 96-9p,

2006 WL 374185, *7 (1996).  However, the Second Circuit has stated that "[t]he regulations do

not mandate the presumption that all sedentary jobs in the United States require the worker to sit

without moving for six hours, trapped like a seat-belted passenger in the center seat on a

transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).  Furthermore, the

regulations provide that "[t]here are some jobs in the national economy . . . in which a person can

sit or stand with a degree of choice.  If an individual had such a job and is still capable of

performing it . . . he or she would not be found disabled." SSR 83-12, 1983 WL 31253, *4

(1983).

        The ALJ's finding that Plaintiff maintains the RFC to perform sedentary work is well

supported by the medical evidence and by the testimony of the vocational expert.  A sedentary

job is one that requires sitting and occasional walking and standing.  *See* 20 C.F.R.

§ 404.1567(a).  Although the ALJ's RFC finding did not specifically state the frequency with

which Plaintiff must alternate between sitting and standing in terms of hours, the ALJ did

determine that Plaintiff must be able to alternate positions "at will" – the most flexible of

standards – in order to meet the exertional requirements of sedentary work.  *See* Report and

Recommendation at 30.  Based upon the substantial medical evidence in the record, the Second

Circuit's interpretation of Social Security Ruling 96-9p, and the determination of the degree of flexibility with which Plaintiff needs to alternate positions, the Court adopts Magistrate Judge Peebles' conclusion that the ALJ's RFC determination was consistent with the applicable legal principles.

E.   **Plaintiff's claim that Magistrate Judge Peebles erred when he relied upon her conservative course of treatment to undermine her credibility, given that her disability is based, in large part, on Fibromyalgia**

Plaintiff objects to Magistrate Judge Peebles' finding that her testimony was inconsistent with the objective medical evidence in the record.  Furthermore, Plaintiff contends that Magistrate Judge Peebles erred in upholding the ALJ's finding that her testimony regarding her symptoms was incredible based on the discrepancy between that testimony and the conservative course of treatment that her physicians had prescribed.  *See* Plaintiff's Objections at 4-5.  Plaintiff argues that a conservative course of treatment is the only course of treatment available for the impairments with which she has been diagnosed.  *See id.* at 5.

When engaging in the five-step disability analysis, an ALJ must take into account Plaintiff's subjective complaints of pain that result from her impairment.  *See* 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  However, the ALJ need not give the claimant's subjective testimony controlling weight if that testimony contradicts the objective medical evidence presented.  *See* 20 C.F.R. § 404.1529(a).  When determining what degree of weight to give such testimony, an ALJ must consider the applicant's credibility and motivation in providing such testimony and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, *5 (N.D.N.Y. Feb. 11, 1998) (citing *Marcus*, 615 F.2d at 27-28).  If the

claimant's testimony is not consistent with the objective medical evidence in the record, the ALJ

must consider additional factors, including (1) the claimant's daily activities; (2) the location,

duration, frequency and intensity of any symptoms; (3) precipitating and aggravating factors; (4)

the type, dosage, effectiveness and side effects of any medications that the claimant takes; (5)

other treatment that the claimant received; and (6) other measures that the claimant took to

relieve her symptoms.  *See* 20 C.F.R. §§ 404.15299c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  After

reviewing the medical evidence and considering a claimant's testimony, the ALJ may accept or

reject the claimant's subjective complaints of pain.  *See Martone*, 70 F. Supp. 2d at 151.

However, if the ALJ rejects such testimony, he must specifically state the basis for doing so.  *See*

*id.* (citing *Brandon v. Bowen*, 666 F. Supp. 604, 609 (S.D.N.Y. 1987)).

          A review of the record clearly indicates that Plaintiff's subjective testimony is

inconsistent with the objective medical evidence in the record, including treating and examining

physicians' opinions that Plaintiff is capable of performing sedentary work notwithstanding her

impairments.  *See* Tr. at 15.  Furthermore, Plaintiff's treating and examining physicians opine

that, although Plaintiff suffers from an impairment, she has "only mild restrictions on heavy

lifting and carrying, repetitive bending, and prolonged walking or standing," which is wholly

inconsistent with Plaintiff's testimony that she is completely precluded from performing any

work-related activities.  *See id.*  In addition to Plaintiff's testimony at the administrative hearing,

she also reported that she performs "all of the housework on her own, including cooking,

cleaning, laundry, and shopping."  *See* Tr. at 62, 64-65, 279-80.  Accordingly, because Plaintiff's

subjective complaints of pain are inconsistent with the objective medical evidence in the record,

as well as her own report about the extent of her daily activities, the Court adopts Magistrate

Judge Peebles' conclusion that the ALJ properly concluded that Plaintiff's testimony was not credible.[2]

## IV. CONCLUSION

After reviewing the entire record in this file, Magistrate Judge Peebles' Report and Recommendation and Plaintiff's objections thereto, as well as the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Peebles' June 12, 2007 Report and Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: September 9, 2008
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[2] The Court notes that, although Magistrate Judge Peebles stated that Plaintiff's symptoms were wholly inconsistent with the extent of her daily activities "as well as the conservative course of treatment followed over time," he did not rely upon that conservative course of treatment, nor did the ALJ, to support his conclusion that, based upon the record, "the ALJ's determination that [P]laintiff's reports of her symptomology [were] not wholly credible [were] both well-articulated, and supported by substantial evidence in the record." *See* Report and Recommendation at 39.

-15-